IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

FILED
JAN 27 2012
WILLIAM B. GUTHRIE
Clerk, U.S. District Court
By _____
Deputy Clerk

1.    SANDRA SIMMONS, an individual,    )
                                                    )
         Plaintiff,                            )
                                                    )    Case No. **CIV 12-043-JHP**
v.                                                   )
                                                   )
1.    DURANT HMA PHYSICIAN         )
      MANAGEMENT, LLC, a domestic    )
      limited liability company; and       )
                                                 )
2.    HEALTH MANAGEMENT            )
      ASSOCIATES, INC., a foreign       )
      corporation d/b/a MEDICAL CENTER )
      OF SOUTHEASTERN OKLAHOMA, )
                                               )    **JURY TRIAL DEMANDED**
        Defendants.                     )    **ATTORNEY LIEN CLAIMED**

## COMPLAINT

The plaintiff, Sandra Simmons, by and through her counsel of record, BROWN & GOULD, PLLC, respectfully files this Complaint setting forth her claims against the defendants, Durant HMA Physician Management, LLC and Health Management Associates, Inc., as follows:

### I.
### THE PARTIES

1.    The plaintiff, Sandra Simmons ("**Plaintiff**" or "**Simmons**"), is an individual adult resident of Bryan County, Oklahoma.

2.    The defendant, Durant HMA Physician Management, LLC ("**Durant HMA**"), is a domestic limited liability company whose registered agent for the service of process in

1

Oklahoma is The Corporation Company, 1833 S. Morgan Rd., Oklahoma City, OK 73128.

3.  The defendant, Health Management Associates, Inc., ("**Health Management**"), is a foreign for-profit corporation whose registered agent for service of process in Oklahoma is The Corporation Company, 1833 S. Morgan Rd., Oklahoma City, OK 73128.

4.  Health Management operates the Medical Center of Southeastern Oklahoma ("**Medical Center**"), a one-hundred and forty-eight (148) bed Acute Care Hospital with a medical staff of over one-hundred (100) physicians that serves the public in southeastern Oklahoma.

5.  Upon information and belief, Durant HMA is the entity through which the employees of Health Management who work at the Medical Center, including Plaintiff, are paid.

6.  Upon information and belief, Durant HMA and Health Management (collectively, "**HMA**" or "**Defendants**") are located in the same physical place of business at the Medical Center, have common officers and/or directors, and share or co-determine matters governing the essential terms and conditions of employment for the employees working at the Medical Center. Thus, these two entities are so closely related through operation and control that they engaged in a common enterprise and served as Plaintiff's joint employer at all times relevant to this case.

## II.
## JURISDICTION AND VENUE

7. This civil action arises out of HMA's wrongful discharge of Simmons' employment and is based on the following claims: (1) interference with and retaliation for her use or attempted use of medical leave in violation of the Family and Medical Leave Act ("**FMLA**"), 29 U.S.C. § 2601, *et seq.*; (2) retaliation and wrongful discharge for her internal and external reports of unlawful activities, for which Simmons was performing an important public obligation, exposing wrongdoing by HMA and its staff, and performing an act that public policy would encourage, which was made actionable by the Oklahoma Supreme Court in *Burk v. K-Mart Corp.*, 1989 OK 22, 770 P.2d 24; and (3) retaliation for placing HMA on notice of a work related injury in violation of Oklahoma state law.

8. Jurisdiction over Plaintiff's federal claims is vested in this Court under 28 U.S.C. § 1331 and 29 U.S.C. § 2617(a)(2). Furthermore, this Court has supplemental jurisdiction over Plaintiff's corresponding state law claims pursuant to 28 U.S.C. § 1367(a) because Plaintiff's state law claims arise out of the same core of operative facts as Plaintiff's federal claims.

9. Plaintiff's claims arose in Bryan County, Oklahoma, which is also where HMA is located. Bryan County, Oklahoma, is located within the judicial district for the United States District Court for the Eastern District of Oklahoma. Thus, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## III.
## STATEMENT OF FACTS

10.  Plaintiff Sandra Simmons began her employment with HMA on or about March 30, 2008, working at the Medical Center until her wrongful termination on or about October 19, 2011.

11.  Simmons was originally hired as an office manager for one of the clinics at the Medical Center. Within a few months, she assumed the responsibilities of payroll for the staff of Dr. Dan Castro ("**Dr. Castro**"), who also operated a clinic at the Medical Center. Over the ensuing months, Simmons assumed additional responsibilities over Dr. Castro's clinic, including its daily operations, management of its staff, and referrals from SoonerCare.

12.  As a result of her increased job responsibilities, Simmons was promoted to Area Manager in or around May or June of 2009.

13.  As an Area Manager, Simmons supervised three (3) site managers at the Medical Center and became responsible for implementing and ensuring compliance with policies and procedures, including policies and procedures regarding Dr. Castro's billing.

14.  In her position as an Area Manager, Simmons reported to Jamie McGaugh ("**McGaugh**"), Assistant Controller of the Medical Center.

15.  Upon the assumption of her new role as an Area Manager, Simmons began to notice and express her concerns for the unlawful, irregular, fraudulent, and otherwise unethical activities in which Dr. Castro was engaged.

16.  Specifically, Simmons discovered that billing and other paperwork in Dr.

Castro's clinic were apparently being falsified because Medicare and SoonerCare patients were supposedly receiving medical services while Dr. Castro was not present in his clinic. Furthermore, Simmons discovered that the proper referrals were not being obtained from the primary care physicians for these same patients, and thus that Dr. Castro was not obtaining or submitting the proper documentation for his medical services.

17. Perhaps more shockingly, Simmons discovered that the percentage of Dr. Castro's new patients that were recommended for surgery by Dr. Castro was extremely high. Simmons also began to notice that Dr. Castro was performing surgeries in the hospital that could have been performed within the clinic, and that Dr. Castro began pressuring his staff to talk potential surgery candidates into potentially-unnecessary surgeries. Furthermore, several patients began complaining to the billing office that their surgical fees were excessive.

18. Simmons expressed her concerns with Dr. Castro's irregular and fraudulent billing practices to McGaugh, her direct supervisor.

19. In or around the fall of 2009, the United States Attorney for the Eastern District of Oklahoma raided Dr. Castro's clinic to collect medical records and billing records in order to audit around three-hundred (300) original patient's medical records. As part of this audit, the U.S. Attorney requested several hundred thousand dollars back from Dr. Castro because of his irregular and fraudulent billing practices.

20. Simmons was required to review each chart in question as part of this audit

so that the necessary paperwork for an appeal could be completed. In addition, Simmons was questioned by an investigator with the U.S. Attorney's office about her knowledge of Dr. Castro's irregular and fraudulent billing practices and surgeries.

21.     Furthermore, in 2010, Simmons was questioned by a panel about Dr. Castro's irregular and fraudulent billing practices and surgeries. During her questioning, Simmons confirmed that Dr. Castro was engaged in irregular and fraudulent billing practices, explained her concern about the high percentage of patients who were scheduled for surgery, told the panel of Dr. Castros' odd behavior towards patients who cancelled surgeries and the pressure he exerted on his staff to talk patients into surgery, and confirmed that Dr. Castro was performing medically unnecessary surgeries on patients.

22.     Thereafter, in or around May 2011, Simmons was subpoenaed to testify before a grand jury regarding Dr. Castro's irregular and fraudulent billing and surgeries.

23.     Just prior to being subpoenaed, on or around April 8, 2011, Simmons took medical leave under the FMLA in order to give birth to her child. Following a period of maternity leave, Simmons returned to work on or around July 5, 2011.

24.     Upon Simmons' return to work after exercising her rights under the FMLA, HMA sought to push Simmons out of her employment. She was excluded from meetings that involved her responsibilities as Area Manager and her decision-making authority over matters involving her responsibilities as Area Manager were taken away.

25.     Thereafter, on or about August 1, 2011 Simmons discovered an alarming odor

coming from within the clinic and requested a mold test be obtained. The mold test came back as positive.

26. As a result of this mold, Simmons became congested, wheezy and developed a cough.

27. On or about September 2011, Simmons notified the Occupational Safety and Health Administration ("**OSHA**") of the mold issues within the clinic.

28. On or about October 7, 2011, Simmons notified HMA of the health issues she was experiencing as a result of the mold and had a medical review of her symptoms. Simmons was given a prescription for an inhaler at the medical review.

29. On or about October 19, 2011, Simmons was wrongfully discharged from her employment with HMA in a meeting with Phillip Baker ("**Baker**"), the CFO, and Patricia Dorris, the Chief Executive Officer of the Medical Center. Notably, Baker was the direct supervisor of McGaugh, to whom Simmons had complained about Dr. Castro's unlawful activities. During her termination meeting, Simmons was told that the Medical Center "was going to make a change" and that she was being fired. Simmons was then presented with a write-up that falsely claimed that Simmons violated company policy by giving preferential treatment to the staff for their use of sick time and for failing to wear her name badge.

30. The stated reasons for Simmons' discharge, however, were merely pretext for the underlying retaliation. Simmons did not give employees preferential treatment for their use of sick time. Furthermore, Simmons had never been disciplined or counseled over her

alleged failure to wear her name badge.

31.  Rather, HMA wrongfully discharged Simmons in violation of the FMLA by retaliating against her for her use of medical leave. Furthermore, HMA wrongfully discharged Simmons in violation of Oklahoma state law by retaliating against her for exposing Dr. Castro's wrongdoing and for making a complaint of mold at the Medical Center, a public place where health and safety is paramount.

32.  As a direct and proximate result of HMA's unlawful conduct, Simmons has suffered injuries and incurred damages.

## IV.
## THEORIES OF RECOVERY

### A. First Count: Violations of the FMLA

For her first cause of action, Plaintiff incorporates all of her prior allegations and further alleges and states as follows:

33.  The matters alleged above constitute interference with and retaliation for Plaintiff's use of medical leave under the FMLA, 29 U.S.C. § 2601, *et seq.*

34.  Plaintiff was entitled to medical leave under the terms of the FMLA. Plaintiff worked for Defendants, entities with more than fifty (50) employees within a seventy-five (75) mile radius of Plaintiff's work site, for more than one (1) year and for more than one thousand, two hundred and fifty (1250) hours within a one year period prior to her need for leave. Furthermore, when Plaintiff returned from maternity leave under FMLA, Defendants began to retaliate against her for the use of medical leave by discharging Plaintiff. This

interference and retaliation was done in response of Plaintiff exercising her rights under the FMLA.

35.  As the direct and proximate result of Defendants' action, Plaintiff has suffered injuries and is entitled to recovery of all damages or other relief allowed by the FMLA, including but not limited to, lost wages (past and future), liquidated damages, and attorney's fees and costs.

### B. SECOND COUNT: *BURK* TORT RETALIATION

For her second cause of action, Plaintiff incorporates all of her prior allegations and further alleges and states as follows:

36.  The matters alleged above constitute a violation of Oklahoma's public policy which prohibits wrongful termination and retaliation against a whistle-blower for performing an act consistent with a clear and compelling public policy, *i.e.*, refusing to participate in an illegal activity; performing an important public obligation; exercising a legal right or interest; exposing some wrongdoing by the employer; and performing an act that public policy would encourage or for refusing to do something that public policy would condemn. Specifically, Plaintiff's reports concerning Dr. Castro's irregular and fraudulent billing practices and surgeries, and her report of the hazardous mold growth within the Medical Center, protected Plaintiff from retaliation or wrongful termination.

37.  As damages, Plaintiff has suffered lost earnings, past and future, and other compensatory damages.

38. Because the actions of Defendants were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

### C. THIRD COUNT: WORKERS COMPENSATION RETALIATION

For her third cause of action, Plaintiff incorporates all of her prior allegations and further alleges and states as follows:

39. The matters alleged above constitute retaliation for Plaintiff placing her employer on notice of a work related injury.

40. Specifically, Plaintiff was employed by Defendants, was injured during the course of her employment, received treatment under circumstances which should have placed Defendants on notice of her work-related injury, and was consequently terminated.

41. As damages, Plaintiff has suffered lost earnings, past and future, and other compensatory damages.

42. Because the actions of Defendants were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

## V.
## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in favor of Plaintiff and against Defendants and assess compensatory damages including but not limited to back pay, future wages, together with pre- and post-judgment interests, costs, attorney's fees, liquidated damages, emotional distress damages, punitive damages, and other relief as this Court may deem equitable and appropriate and allowed by law.

Respectfully submitted,

**BROWN & GOULD, PLLC**

_____
George H. Brown, OBA # 18020
Tony Gould, OBA # 18564
Joshua C. Stockton, OBA # 21833
**BROWN & GOULD, PLLC**
136 N.W. 10th Street
Oklahoma City, OK 73103
Telephone: (405) 235-4500
Facsimile: (405) 235-4507
Email: jstockton@browngouldlaw.com
**ATTORNEYS FOR PLAINTIFF**